1  Daniel S. Brome, CA State Bar No. 278915
2  dbrome@nka.com
   NICHOLS KASTER, LLP
3  235 Montgomery St., Suite 810
   San Francisco, CA  94104
4  Telephone: (415) 277-7235
5  Facsimile: (415) 277-7238

6  Michele R. Fisher, MN State Bar No. 340133*
7  fisher@nka.com
   NICHOLS KASTER, PLLP
8  4700 IDS Center
9  80 South Eighth Street
   Minneapolis, MN 55402
10 Telephone: (612) 256-3200
11 Facsimile: (612) 215-6870
   (*admitted *pro hac vice*)
12
13 Jason Christopher Marsili, CA State Bar No. 233980
   jmarsili@rmrllp.com
14 ROSEN MARSILI RAPP LLP
15 3600 Wilshire Blvd., Suite 1800
   Los Angeles, CA  90010-2622
16 Telephone: (213) 389-6050
17 Facsimile: (213) 389-0663

18 *Attorneys for Plaintiffs and Others Similarly Situated*
19
                 **IN THE UNITED STATES DISTRICT COURT**
20                **CENTRAL DISTRICT OF CALIFORNIA**
21
22 Lisa Pittman and Joel MacKay, on behalf     **Case No. 2:21-cv-02044-DOC-SSCx**
   of themselves and others similarly
23 situated, and the general public,           **NOTICE OF MOTION AND
                                               MOTION FOR SETTLEMENT
24                           Plaintiffs,        APPROVAL**
25      v.
                                               Date: October 21, 2024
26 CACI, Inc. – Federal,                       Time: 8:30 a.m.
                                               Place: Courtroom 10A
27                           Defendant.        Hon. David O. Carter
28

                                    -i-

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on October 21, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard, at the United States District Court for the Central District of California, Southern Division, Ronald Reagan Federal Building, United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701, 9th Floor, Courtroom 10 A, before the Hon. David O. Carter, Plaintiffs Lisa Pittmon and Joel MacKay ("Plaintiffs"), for themselves and on behalf of all others similarly situated, will and hereby do move the Court to approve the Settlement Agreement.

The Motion is based upon the Notice of Motion and Motion for Settlement Approval and Memorandum of Points and Authorities in Support Thereof; the supporting Declaration of Daniel S. Brome, Esq., (Brome Dec.) and accompanying exhibits including the Settlement Agreement attached as Exhibit A to the declaration; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: September 16, 2024                    **NICHOLS KASTER, LLP**
By: */s/Daniel S. Brome*
Daniel S. Brome

1

# **TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION........................................................................ii

3   TABLE OF CONTENTS ............................................................................................iii

4   TABLE OF AUTHORITIES .......................................................................................iv

5   MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

6      I.    INTRODUCTION.............................................................................1

7      II.   FACTUAL AND PROCEDURAL BACKGROUND...................................1

8        A.  Settlement Terms ...........................................................................3

9      III.   ARGUMENT ...............................................................................4

10       A.  The Two-Step, Rule 23 Approval Process is Not Necessary Here ..............4

11       B.  The FLSA Settlement Warrants Approval ....................................5

12       C.  The Court Should approve the PAGA settlement .........................8

13        1.  The settlement meets the statutory requirements .....................8

14        2.  The PAGA settlement here is fundamentally fair and reasonable. ...........8

15         a.  The amount offered in settlement appropriately reflects strengths of

16         Plaintiffs' case, balanced against the risk of further proceedings. ...............9

17         b.  The extent of discovery completed and stage of the proceedings. ......12

18         d.  The presence of a government participant. .........................................13

19       D.  The Court Should Approve the Requested Fees and Costs ........................13

20       E.  The Court Should Approve the Requested Costs .....................................18

21       F.  The Court Should Approve the Modest Enhancement Awards .................18

22       G.  The Court Should Approve the *Cy Pres* Designee .....................................18

23     IV. CONCLUSION ............................................................................19

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Arias v. Superior Ct.*, 46 Cal.4th 969 (2009) .................................................................5

*Aronson v. Gannett Co.*, 2023 WL 2025706 (C.D. Cal. Feb. 15, 2023) ...........passim

*Basiliali v. Allegiant Air, LLC*, 2019 WL 8107885

    (C.D. Cal. July 1, 2019) ...............................................................................8, 15

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015).................14

*Bisaccia v. Revel Systems, Inc.*, 2019 WL 3220275

    (N.D. Cal. July 17, 2019) ..............................................................................17

*Bower v. Cycle Gear, Inc.*, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .............13

*Campanelli v. Hershey Co.*, 2011 WL 3583597 (N.D. Cal. May 4, 2011)................5

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) .................................11

*Connelly v. Starbucks Corp.*, 2023 WL 6387077

    (E.D. Cal. Sept. 29, 2023) ....................................................................9, 12, 14

*Dashiell v. Cnty. of Riverside*, 2018 WL 3629915 (C.D. Cal. July 19, 2018) ...........5

*Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020)........13

*Dermis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ..............................................19

*Dilts v. Penske Logistics, LLC*, 2016 WL 4530816 (S.D. Cal. Mar. 11, 2016) .......17

*Eddings v. Health Net, Inc.*, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ............19

*Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801

    (E.D. Cal. Nov. 27, 2012) .............................................................................16

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004) ..................................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................................9

*Hernandez v. Wells Fargo Bank NA*, 2022 WL 93618

    (N.D. Cal. Jan. 9, 2018)................................................................................15

*Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959

    (C.D. Cal. Aug. 4, 2015) ..............................................................................16

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ..................................15

-iv-

*In re Walgreen Co. Wage & Hour Litigation*, 2014 WL 12853547

(C.D. Cal. Oct. 3, 2014) ...................................................................... 16

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ..................... 8

*Kudatsky v. Tyler Technologies, Inc.*, 2021 WL 5356724

(N.D. Cal. Nov. 17, 2021) .................................................................. 17

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ........................... 15

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ......................... 5, 6

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848

(E.D. Cal. Nov. 27, 2017) .................................................................. 19

*McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2018 WL 3474472

(E.D. Cal. July 19, 2018) ..................................................................... 5

*Medina v. Evolve Mortgage Services, LLC*, 2023 WL 11915763

(C.D. Cal. Apr. 3, 2023) ...................................................................... 17

*Middleton v. Halliburton Energy Servs., Inc.*, 2024 WL 1930691

(E.D. Cal. May 2, 2024) ............................................................... passim

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................ 19

*Patel v. Nike Retail Servs., Inc.*, 2019 WL 2029061

(N.D. Cal. May 8, 2019) ............................................................... passim

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) .......................................... 13

*Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230 (E.D. Cal. 2014) ................... 15

**Statutes**

29 U.S.C. § 216 ................................................................................ 13

Cal. Lab. Code § 2699 ........................................................... 5, 8, 11, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case was filed as a putative class and collective action alleging that Plaintiffs and other background investigators worked off-the-clock for Defendant. Following years of litigation, including ample discovery and multiple contested motions, this case was moving towards trial for the two Named Plaintiffs and for the PAGA claims of other allegedly aggrieved employees. In that posture, the Parties mediated with Hon. Carla Woehrle (Ret.), an established mediator who had previously mediated in this matter, and reached a resolution in principle. The Parties have now finalized a settlement agreement that brings this matter to a close. Plaintiffs respectfully request that the Court grant settlement approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this case on March 5, 2021 (ECF No. 1), and filed a First Amended Complaint on July 19, 2021 (ECF No. 48). Plaintiffs moved for distribution of judicial notice on July 2, 2021 (ECF No. 41), which the Court granted on August 27, 2021 (ECF No. 56). Approximately 335 individuals joined the case through the notice process. (See ECF No. 134-1, Brome Dec. ISO Plf. Opp. to Def. Mtn. for Decertification.) Plaintiffs moved for class certification on February 21, 2022 (ECF No. 69), which the Court denied on August 11, 2022 (ECF No. 91). Throughout that process and since, the Parties engaged in extensive discovery, and worked together to extend the discovery period in order to conduct discovery. (See ECF Nos. 96, Def. Ex Parte Application for Continuance, at 7–9 (explaining discovery conducted to date); 110 (same); 155 at 18 (describing discovery as "protracted and exhaustive.").) As Defendant acknowledges, "Plaintiffs took a 30(b)(6) deposition of two corporate representatives and deposed 11 section leads and managers, served written discovery, and produced hundreds of documents." (ECF No. 155-1, Crosner Dec. ISO Def. Resp. to Plf. Trial Plan, ¶ 8.)

1  As a result of Plaintiffs' efforts, "CACI produced some 73,500 documents for 59
2  custodians (some 166,700 pages), including over 9,000 spreadsheets[.]" (Id. ¶ 9.)

3     In addition to the discovery produced by CACI, the Named and Opt-in
4  Plaintiffs produced 201 declarations. (ECF Nos. 134-1, 134-2.) Additionally, 254
5  of the Opt-in Plaintiffs served responses to Defendants' Requests for Production of
6  Documents, and 220 served responses to Interrogatories. Plaintiffs collectively
7  produced more than 1,300 pages of documents. CACI deposed the Named
8  Plaintiffs and 15 Opt-in Plaintiffs. (ECF No. 134-1.)

9     Fact discovery closed on June 5, 2023. (ECF No. 111.) Following discovery,
10  Defendant filed a motion for summary judgment (ECF No. 128), a motion for
11  decertification (ECF No. 131), and a motion to strike or dismiss PAGA claims
12  (ECF No. 127). Plaintiffs opposed these motions. (ECF Nos. 134, 135, 136.) The
13  Court granted FLSA decertification, denied summary judgment in large part, and
14  explained that proceeding with the representative PAGA claims would present
15  significant difficulties for trial, however, because the California Supreme Court
16  was considering how to handle complex PAGA cases, the Court stayed the case
17  pending the outcome of that decision. (ECF No. 147 at 24–26.)

18     Following the California Supreme Court's decision in *Estrada*, the Parties
19  and the Court revisited the issue of trying the representative PAGA claims. (ECF
20  Nos. 149, 150, 153, 155, 156.) In that process, Plaintiffs submitted a preliminary
21  trial plan that included multiple options to balance the need for an efficient trial
22  with the need for the Parties to effectively present their claims and defenses. (ECF
23  No. 153.) Plaintiffs proposed that a representative sample of the allegedly
24  aggrieved employees would testify, with some witnesses testifying at trial and
25  others testifying through deposition; Defendant rejected those proposals, and asked
26  the Court to dismiss the representative PAGA claims without prejudice, or to
27  submit further briefing on such dismissal. (ECF No. 155 at 23–24.) Defendant
28  stated that "the Court must hear from each PAGA claimant," and did not identify

1   any number of witnesses who could testify on a representative basis. (*Id*. at 17.)
2   The Court then set the matter for trial, recognizing that "[a]s the trial date
3   approaches, and the trial plan crystalizes in light of the Court's rulings on the
4   parties' respective motions, CACI may, if appropriate, move to strike the
5   representative PAGA claims based on CACI's right to due process." (ECF No. 156
6   at 6.) Plaintiffs then moved to reopen discovery (ECF No. 160), which this Court
7   denied on July 10, 2024 (ECF No. 167).

8       Following that decision, the Parties discussed whether resolution might be
9   possible before trial. On July 22, 2024, the Parties mediated with Hon. Carla M.
10  Woehrle (Ret.), a former United States Magistrate Judge for the Central District,
11  who previously mediated this case in September 2022, and so was readily familiar
12  with the facts and legal issues here. (Brome Dec. ¶ 2.) The Parties reached
13  agreement on the monetary value of a settlement, and many non-monetary terms
14  that day, and continued to negotiate non-monetary terms over the following week.
15  (*Id.*) The Parties executed a terms sheet on August 1, 2024, and executed a long-
16  form settlement agreement on September 16, 2024. (*Id.*)

17      **A.    <u>Settlement Terms</u>**

18      The Settlement resolves the claims that are currently in the case: the Named
19  Plaintiffs' claims under the FLSA and the California Labor Code, and the PAGA
20  claims for the Named Plaintiffs and other aggrieved employees. Because the Court
21  denied class certification the Settlement does not include a class component;
22  further, since the Court granted FLSA decertification, the Settlement does not
23  include the FLSA claims for individuals who previously opted-in to the case. Other
24  than the Named Plaintiffs, the Settlement only releases claims for PAGA penalties.
25  (Agreement § 5.) The Named Plaintiffs agreed to a general release of claims. (*Id.* §
26  3.)

27      From the Gross Settlement Amount of $335,000, the Settlement allocates
28  $161,250 to PAGA, $50,000 for the two Named Plaintiffs, $83,750 (25% of the

gross amount) to Plaintiffs' Counsel's fees, $30,000 for costs, and up to $10,000 for costs of administration. (Agreement §§ 1.11, 1.16, 2.1.) 75% of the PAGA amount will be distributed to the California Labor and Workforce Development Agency ("LWDA"), and 25% will be distributed to the aggrieved employees. (*Id.* §§ 1.13, 1.14.) The Named Plaintiffs will each receive a payment of $24,500 for their FLSA and California wage claims, as well as a service payment of not more than $500. (*Id.* §§ 2.2, 2.3.)

The PAGA portion of the agreement covers any background investigator who worked for CACI in California from March 29, 2020 through the date the Agreement was executed. (*Id.* § 1.4.) Under the agreement, each allegedly aggrieved employee receives a pro rata disbursement based on the number of pay periods he or she worked during the PAGA period. CACI estimated that there were 309 aggrieved employees, who worked a total of 13,841 PAGA pay periods; to the extent that supplemental data causes those numbers to increase by 10% or more, the Settlement includes a provision to shorten the release period so that the per-pay-period value will not be devalued. (*Id.* §2.4.3.)

The Settlement is non-reversionary: no funds that remain from uncashed checks will go back to CACI, but will instead be donated to Legal Aid at Work as a *cy pres* beneficiary (*id.* § 7.6.3); if the administrative expenses are less than the amount provided, excess funds will be added to the Gross PAGA Payment (*id.* § 1.11).

## III.   ARGUMENT

### A.    The Two-Step, Rule 23 Approval Process is Not Necessary Here

Under the familiar two-step settlement approval process used in Rule 23 class actions, a court first grants preliminary approval to a settlement. Notice of the settlement then issues to the settlement class, who have the opportunity to object to the settlement or opt out of the settlement to preserve their rights. After the notice period is complete, the parties return to the Court for final approval of the

-4-

1    settlement, which also usually includes approval of attorneys' fees, costs, and any

2    named plaintiff enhancements.

3        FLSA cases do not follow Rule 23 and, FLSA settlements need not follow

4    the notice, opt-out, and objection procedures in Rule 23(e), and no approval

5    hearing is required. *See*, *e.g.*, *Dashiell v. Cnty. of Riverside*, 2018 WL 3629915

6    (C.D. Cal. July 19, 2018) (single approval motion); *Campanelli v. Hershey Co.*,

7    2011 WL 3583597, *1 (N.D. Cal. May 4, 2011) (same); *McKeen-Chaplin v.*

8    *Provident Sav. Bank, FSB*, 2018 WL 3474472, at *1 (E.D. Cal. July 19, 2018)

9    (same). However, FLSA settlements do require court review for fairness. *See*, *e.g.*,

10   *Dashiell*, 2018 WL 3629915, at *2.

11       Similarly, PAGA claims and settlements are not subject to class action

12   requirements for certification or notice. *Arias v. Superior Ct.*, 46 Cal.4th 969

13   (2009). The statute requires court approval for PAGA settlements. Labor Code §

14   2699(s)(2) (formerly § 2699(l)). However, PAGA settlements do not provide for

15   the Rule 23 notice and opt-out process, so one-step approval, often without an

16   approval hearing, is appropriate. *See*, *e.g.*, *Middleton v. Halliburton Energy Servs.,*

17   *Inc.*, 2024 WL 1930691 (E.D. Cal. May 2, 2024) (granting one-step approval in

18   PAGA-only case); *Aronson v. Gannett Co.*, 2023 WL 2025706 (C.D. Cal. Feb. 15,

19   2023) (same); *Patel v. Nike Retail Servs., Inc.*, 2019 WL 2029061 (N.D. Cal. May

20   8, 2019) (same).

21       **B.    The FLSA Settlement Warrants Approval**

22       Settlement of FLSA claims for wages are subject to court approval. *Lynn's*

23   *Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is

24   favored "to promote the policy of encouraging settlement of litigation," where the

25   settlement reflects a "reasonable compromise over issues" that are "actually in

26   dispute." *Id.* at 1354. In order to approve an FLSA settlement, a court must

27   determine it is a "fair and reasonable resolution of a bona fide dispute" of the

28   FLSA claims. *Id.* at 1355; *Dashiell*, 2018 WL 3629915, at *2; *Campanelli*, 2011

-5-

WL 3583597, at *1. Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. Settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context." *Id.*

Here, the settlement is a compromise over issues that both Plaintiff and Defendant acknowledge to be highly disputed, thus approval is warranted.

First, there are numerous issues in dispute here. As illustrated in Defendant's motion for summary judgment and Plaintiffs' opposition, the Parties dispute whether Defendant knew or should have known about Plaintiffs' alleged off-the-clock work. This is the fundamental dispute regarding liability: Plaintiffs contend that Defendant knew that its mandatory performance metrics led background investigators such as Plaintiffs to work unpaid time. Defendant, on the other hand, contends that its policies were facially legitimate and that if it ever learned of an investigator working off-the-clock, it took steps to stop such work and to pay the investigator for all their time worked. Defendant asserts that it was never put on notice that Plaintiffs MacKay or Pittmon worked off-the-clock, and instead that these individuals sought to hide any such work. (*See, e.g.*, ECF No. 91 [Order Denying Class Certification] at 14 (citing MacKay's email to a supervisor stating "I just adjusted m[y] schedule to make it work. Being flexible is how I am able to make my production.").)

In addition to the dispute about whether CACI is liable for unpaid wages based on whether it knew or should have known about off-the-clock work, there are related disputes about whether the alleged violations were willful or in good faith. The two-year statute of limitations for FLSA claims can be extended to three years in the case of a willful violation, which is Plaintiffs' burden. And the statute provides a defense to liquidated damages where the violation was in good faith, which is Defendant's burden. Here, the Parties vigorously disputed whether the

tests for good faith or willfulness could be met here. (*See* ECF No. 128 [Def. Mtn. for Summary Judgment], arguing that Plaintiffs' state law claims failed based on a lack of willfulness.) These disputes significantly impact the amount that Plaintiffs could recover, even if they did establish liability.

Finally, the Parties disputed the amount of time that Plaintiffs could recover if they did prove a violation. Because Plaintiffs' claims are based on alleged off-the-clock work, there are not clear records of the extent of such work. Plaintiffs admit that they did not keep documentary records showing the amount of time they worked but did not record, and Defendant has made clear that it would vigorously challenge any estimates of time worked by Plaintiffs.

The settlement reflects a "reasonable compromise" on these issues. Here, Plaintiffs' best possible outcome—proving liability, establishing a willful violation, defeating Defendant's good faith defense, and proving and recovering for all the hours worked based on their own estimates—would result in a total recovery of $95,114.07.[1] (Brome Dec. ¶ 3.) However, there are numerous ways Plaintiffs could have achieved partial success, yet recovered significantly less than this best-day amount, and less than their settlement amount. For example, if Plaintiffs prevailed on liability but did not recover liquidated damages, and proved 1 hour of unrecorded work per week day, 2 hours of unrecorded weekend work twice per month, and 2 meal and rest period violations per week, they could recover $27,092.65. (*Id.*) The settlement here, which allocates $49,500 to the Named Plaintiffs' claims, reflects a reasonable compromise on the numerous disputed issues. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal.

---

[1] This figure, and other numbers discussed in this paragraph also include the value of Plaintiffs' California state law claims for missed meal and rest periods. While those are not recoverable under the FLSA, these claims would have been part of the individual trial, and factored into the Parties' settlement considerations.

May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval).

Additionally, this settlement was achieved in the context of adversarial litigation, that included ample discovery, multiple contested motions, and ultimately resolution after mediation with a qualified neutral mediator. These facts show that this settlement was not the result of employer overreach, and support approval.

Accordingly, the settlement satisfies the *Lynn's Food* standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

**C.    The Court Should approve the PAGA settlement**

Court approval is required for a PAGA settlement, but the statute does not specify a standard for approval. *See* Cal. Lab. Code § 2699(s) (formerly § 2699(l)). Courts generally look to whether a PAGA settlement "(1) meets the statutory requirements of PAGA and (2) is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Aronson*, 2023 WL 2025706, at *3 (citation and quotation omitted). Here, both factors support approval.

1.    The settlement meets the statutory requirements.

As required, Plaintiffs submitted their PAGA notice to the LWDA at the initiation of the case, and submitted the settlement to the LWDA in conjunction with this filing. (Brome Dec. ¶ 15.) The settlement appropriately distributes 75% of the PAGA allocation to the LWDA and 25% to the aggrieved employees. (*Id.*) The settlement meets the statutory requirements, supporting approval. *E.g.*, *Aronson*, 2023 WL 2025706, at *3; *Basiliali v. Allegiant Air, LLC*, 2019 WL 8107885, at *3 (C.D. Cal. July 1, 2019).

2.    The PAGA settlement here is fundamentally fair and reasonable.

In evaluating the fairness of PAGA settlements, courts are often guided by the *Hanlon* factors used for class action settlements. *Patel*, 2019 WL 2029061, at

-8-

*2 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Here, the relevant factors support approving the PAGA settlement.

> a.  *The amount offered in settlement appropriately reflects strengths of Plaintiffs' case, balanced against the risk of further proceedings.*

Plaintiffs address these three closely-related *Hanlon* factors together. This Settlement warrants approval, because it offers a fair value to the State and to the aggrieved employees, considering the strengths of the case compared to the risks of proceeding.

Plaintiffs' Counsel calculated PAGA penalties based on Defendant's time and pay data, combined with information from declarations from dozens of California-based background investigators. (Brome Dec. ¶ 4.) Plaintiffs' Counsel previously calculated the maximum possible value of PAGA claims as $2,033,250.00. (ECF No. 153 [Plfs' Preliminary Trial Plan] at 4.) This amount included $765,050 for unpaid wage penalties, $634,100 for missed meal periods, and $634,100 for missed rest periods. (*Id.*) The Gross PAGA Payment here ($161,250) amounts to roughly 8% of this total; the Gross Settlement Amount ($335,000) is approximately 16.5% of the total.[2] These reductions are fair in light of the risks that Plaintiffs would face proceeding on the PAGA claims, and are consistent with other PAGA settlements.

First, recovering PAGA penalites would require Plaintiffs to prevail on the merits of their off-the-clock claims, which, as described above, is far from certain.

---

[2] In evaluating PAGA settlements, courts often compare the total settlement value against the potential exposure, as opposed to the portion of the settlement being allocated to PAGA payments. *Middleton*, 2024 WL 1930691, at **4 – 6 (comparing gross settlement amount to range of recovery that would be possible through litigation); *Connelly v. Starbucks Corp.*, 2023 WL 6387077, at *7 (E.D. Cal. Sept. 29, 2023) (same); *Aronson*, 2023 WL 2025706, at *4 (comparing the gross settlement amount to the potential recovery at trial).

1   *See Aronson*, 2023 WL 2025706, at *4 (explaining risk that Plaintiffs could fail to
2   prove their claims at trial).

3        Moreover, these amounts depend on Plaintiffs proving violations for all
4   other California-based background investigators, and the frequency of these
5   violations. Because the available data is limited, Plaintiffs intended to offer
6   representative testimony at trial, while CACI intended to oppose any attempt at
7   representative proof. The court in *Aronson* found this type of risk to be particularly
8   compelling where the case covered 374 allegedly aggrieved employees, only three
9   of whom were planning to testify at trial. *Id.*; *see also Patel v. Nike Retail Servs.,*
10  *Inc.*, 2019 WL 2029061, at *3 (N.D. Cal. May 8, 2019) ("the need to demonstrate
11  all 40 aggrieved employees' entitlement to a PAGA award threatens a risky,
12  expensive, and complex trial that would extend the duration of the lawsuit.") Given
13  that the Court has previously denied class certification and granted FLSA
14  decertification, Plaintiffs' Counsel believes there is considerable risk that a trial
15  would not lead to an award of PAGA penalties based on all allegedly aggrieved
16  employees. (Brome Dec. ¶ 5.)

17       Further, Plaintiffs seek PAGA penalties for three predicate violations:
18  unpaid wage claims, missed meal period, and missed rest periods. (ECF No. 153.)
19  However, CACI would likely argue that the asserted meal and rest period
20  violations are improperly duplicative of the unpaid wage claims, since Plaintiffs'
21  theory is that background investigators worked off-the-clock during times that
22  were recorded as meal or rest periods—just like at other times—because of
23  CACI's mandatory performance metrics. CACI would likely argue that it is
24  improper to impose penalties for multiple violations based on the same type of
25  conduct. *See Aronson*, 2023 WL 2025706, at *4 (noting concern about "stacking"
26  PAGA penalties). While Plaintiffs contend these are independent violations and
27  would support independent penalties, the Court previously raised the issue (ECF
28  No. 150 at 4, n. 1), and subsequent legislative changes to PAGA (although not

-10-

applicable to this case) arguably indicates that only one penalty should apply. *See* Cal. Lab. Code § 2699(i).

Significantly, the amount of PAGA penalties may be reduced in the Court's discretion. Even if Plaintiffs established liability, and established violations for all aggrieved employees, that does not guarantee that Plaintiffs would recover their maximum amount of penalties. Courts can and do dramatically cut PAGA penalties. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (affirming trial court's decision to reduce penalties by 90%).

The procedural posture here also demonstrates that further proceedings would be difficult and risky. Defendant had already challenged Plaintiffs' ability to proceed with representative claims, and would have done so again. Even if those challenges failed, the case would proceed to trial, with its own set of risks. Even if Plaintiffs prevailed at trial, appellate proceedings were likely. There was no fast or safe path forward; the risks of further litigation support settlement approval.

Here, Plaintiffs contend that the settlement value is very reasonable in light of the risks. The Gross Settlement Amount reflects 16.5% of the maximum exposure Plaintiffs' Counsel previously calculated for PAGA penalties, which compares favorably with similar PAGA settlements.

In *Middleton*, the court approved a PAGA settlement where the gross amount ($100,000) was less than one percent the maximum exposure ($10,413,600), or 5.76% of the exposure assuming "a low estimate of the possible PAGA penalty amount ($100) and assuming at least one violation per pay period" ($1,735,600). 2024 WL 1930691, at *5. In this case, using those same assumptions of $100 per penalty and at least one violation per pay period, Defendant's exposure would be approximately $1,384,100; the Gross Settlement Amount here is 24% of this amount. (Brome Dec. ¶ 5.) The *Middleton* court found the settlement fair, adequate, and reasonable because, while the maximum possible exposure was much higher, counsel for the plaintiff explained that "a more likely and reasonable

-11-

1    expectation of a post-trial verdict would be $250,000." 2024 WL 1930691, at *6.

2    In that context, the gross amount represented 40% of a realistic outcome. Here too,

3    Plaintiffs' Counsel believes that a realistic outcome is significantly less than the

4    maximum exposure, and that a trial resulting in $463,500 of PAGA penalties

5    would be a favorable result. (Brome Dec. ¶ 6.) The Gross Settlement Amount

6    represents 72% of this; the Gross PAGA Allocation alone ($161,250) represents

7    35% of this amount.

8       Similarly, in *Aronson*, the court found the PAGA settlement fair and

9    reasonable where the gross settlement amount was approximately 1.9% of the

10   maximum exposure, based on the likelihood that plaintiffs could not prove

11   violations for all of the potentially aggrieved employees, which could drastically

12   reduce the recovery. 2023 WL 2025706, at *4. Likewise, in *Connelly v. Starbucks

13   Corp.*, the court approved a PAGA settlement that reflected approximately 15% of

14   what plaintiffs contented was the potential recovery, even though the Court

15   endorsed alternate calculations that meant the settlement amounted to only 2.2% of

16   the possible recovery. 2023 WL 6387077, at **7–9 (E.D. Cal. Sept. 29, 2023).

17       The settlement amount here compares favorably to these recent PAGA

18   settlements, whether comparing to the maximum potential recovery or lower

19   realistic recovery ranges. This is a favorable result, that supports approval.

20       *b.*   *The extent of discovery completed and stage of the proceedings.*

21      The Parties have vigorously litigated this case. There have been multiple

22   contested motions, including multiple motions addressing Plaintiffs' ability to

23   proceed for a group in the context of FLSA claims, California class claims, and

24   PAGA claims. The Court ruled on Defendant's summary judgment motion. The

25   Parties have taken extensive discovery. This supports settlement approval. *See

26   Connelly*, 2023 WL 6387077, at *9 (finding the extent of discovery and stage of

27   proceedings weigh in favor of approval).

28       *c.*   *The experienced views of counsel.*

1  Plaintiffs' Counsel is experienced in wage and hour litigation, and believes
2  this settlement is fair, reasonable, and adequate. (Brome Dec. ¶¶ 6–7.) This supports
3  approval. *Patel*, 2019 WL 2029061, at *4. Counsel is confident – in light of the
4  years of hard-fought litigation thus far – that CACI and its counsel have effectively
5  defended this case and would continue to vigorously defend the claims through trial
6  and appeal. *Id.* (noting that, like here, the defendant had already defeated class
7  certification).

8         *d.  The presence of a government participant.*

9  To date, the LWDA has not sought to intervene in this matter, despite
10  receiving notice. This supports approval. *Patel*, 2019 WL 2029061, at *5.

11  In sum, analysis of the relevant *Hanlon* factors supports a finding that the
12  PAGA settlement here is fair, adequate, and reasonable, and should be approved.

13  **D.    The Court Should Approve the Requested Fees and Costs**

14  Both the FLSA and PAGA provide for attorneys' fees for a prevailing
15  employee. *See* 29 U.S.C. § 216(b); Cal. Lab. Code § 2699(k)(1) (formerly §
16  2699(g)). Here, because the settlement resulted in a common fund, it is appropriate
17  to award fees based on a percentage of the fund.

18  The Ninth Circuit's typical range of common fund attorneys' fee awards is
19  20% to 33 1/3% of the total settlement value, with 25% "considered the
20  benchmark." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "Although
21  25% is the benchmark for a reasonable fee award, in most common fund cases, the
22  award exceeds that benchmark." *Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700,
23  at *7 (N.D. Cal. Aug. 24, 2020) (quotation and citation omitted).

24  Awards departing from the benchmark must be supported by an explanation
25  of special circumstances in the record justifying departure. *Bower v. Cycle Gear,
26  Inc.*, 2016 WL 4439875, at *6 (N.D. Cal. Aug. 23, 2016). Factors taken into
27  consideration include the result obtained for plaintiffs, quality of representation,
28  complexity of the issues, risk of nonpayment assumed by counsel, reaction of the

-13-

1 | class to the settlement, and lodestar comparison. *Bellinghausen v. Tractor Supply*
2 | *Co.*, 306 F.R.D. 245, 260 (N.D. Cal. Mar. 20, 2015). Here, though Counsel does not
3 | seek a departure from the benchmark, the factors support the requested fees.

4 | First, the recent PAGA settlements discussed above, which involved similar
5 | total amounts and obtained similar results compared to be possible and likely
6 | exposure have approved common fund attorneys' fees at or above the benchmark
7 | percentage sought here. *Middleton*, 2024 WL 1930691, at *7 (approving fees equal
8 | to 1/3 of the total settlement); *Connelly*, 2023 WL 6387077, at *19 (approving fees
9 | at 25%, instead of the requested 33 1/3%); *Patel*, 2019 WL 2029061, at *4
10 | (approving fees of more than 43% of the total settlement).

11 | Next, the quality of counsel and complexity of the issues support awarding
12 | fees at 25%. As described in the accompanying declaration, Counsel has
13 | considerable experience litigating wage and hour cases, including off-the-clock
14 | cases and background investigator cases. (Brome Dec. ¶ 7.) Given the nuanced legal
15 | issues here, and the specific factual circumstances of this industry, this experience
16 | contributed to the results obtained, and supports approval.

17 | The risk of non-payment also supports approval of fees from the common
18 | fund. "Courts consistently recognize that the risk of non-payment or reimbursement
19 | of expenses is a factor in determining the appropriateness of counsel's fee award."
20 | *Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *13 (C.D. Cal. July 14,
21 | 2014). The contingent nature of the work performed also weighs in favor of the
22 | requested fees. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580 (2004)
23 | ("A contingent fee must be higher than a fee for the same legal services paid as they
24 | are performed. The contingent fee compensates the lawyer not only for the legal
25 | services he renders but for the loan of those services."). Here, Plaintiffs' Counsel
26 | handled this case on a pure contingency basis: they have not received any payment
27 | for the time spent litigating the case in the last four years, nor have they received

28 |

1  reimbursement for out-of-pocket costs. (Brome Dec. ¶ 10.) Counsel alone bore the

2  financial risk of unsuccessful litigation.

3      Finally, a lodestar cross-check confirms that the requested fees are

4  reasonable. A "lodestar cross-check calculation need entail neither mathematical

5  precision nor bean-counting." *Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230,

6  at *25 (E.D. Cal. 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306

7  (3d Cir. 2005)). Indeed, trial courts have the discretion to forego a lodestar cross-

8  check and use other means to evaluate the reasonableness of a requested percentage

9  fee. *Laffitte*, 1 Cal. 5th at 506; *see also Hernandez v. Wells Fargo Bank NA*, 2022

10  WL 93618 (N.D. Cal. Jan. 9, 2018) (approving fees without a lodestar cross-check).

11  "Where a lodestar is merely being used as a cross-check, the court may use a rough

12  calculation of the lodestar." *Aguilar*, 2017 WL 2214936, at *5 (quotations omitted).

13  A lodestar crosscheck in this case confirms the reasonableness of a 25% attorneys'

14  fees award.

15      Here, Counsel's lodestar is roughly $975,000. (Brome Dec. ¶ 13.)

16  Accordingly, a 25% fee award would amount to less than 10% of Counsel's

17  lodestar. Such a "negative multiplier" is unsurprising in a case that has been

18  vigorously litigated over many years. *See Patel*, 2019 WL 2029061, at *4 (limited

19  lodestar cross-check supported fee request, where the fees amounted to 18% of

20  counsel's lodestar, given that the case had been litigated for five years and involved

21  substantial discovery, motion practice, and mediation). *Accord Basiliali v. Allegiant*

22  *Air, LLC*, 2019 WL 8107885, at *4 (C.D. Cal. July 1, 2019) ("the total requested

23  fee is approximately $150,000. This number falls well below the approximate

24  lodestar amount. Accordingly, the Court finds that the Settlement Agreement's

25  award of Attorneys' Fees is reasonable.").

26      As explained in the accompanying declaration, this lodestar represents

27  approximately 2,740.5 hours of billable work, primarily at rates of $195 for

28  paralegals and other support staff, $195 to $275 for data review and damages

-15-

calculations, and $550 for Senior Counsel work by Daniel Brome. (Brome Dec. ¶¶
11 - 13).

Plaintiffs' Counsel worked 2,740.5 hours on this matter to date.[3] (Brome Dec.
¶ 11.) The hours reflect work investigating the claims pre-suit; interviewing
potential clients; preparing discovery responses; reviewing and analyzing
documents and data; preparing documents to be produced; preparing for and taking
depositions of Defendant's witnesses; defending Plaintiff depositions; briefing and
arguing multiple motions; calculating and revising a detailed damages model;
conducting and preparing for mediations; preparing for trial; negotiating the
settlement terms; and briefing this approval motion. (*Id.*)

These hours are more than reasonable in light of the complexity and long
history of this case. Wage and hour cases can entail significant discovery, motion
practice, and damages analysis, leading courts to find that higher hours than
requested here. *See In re Walgreen Co. Wage & Hour Litigation*, 2014 WL
12853547, at *10 (C.D. Cal. Oct. 3, 2014) (9,441 hours requested were reasonable
where case had "been litigated for more than three years," included multiple
motions and preparation for trial); *Hightower v. JPMorgan Chase Bank, N.A.*, 2015
WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015) (6,636 hours reasonable where case
was ongoing for more than four years, entailed considerable discovery and a motion
for class certification). Even cases without substantial motion practice may
reasonably require significant attorney time. *E.g.*, *Franco v. Ruiz Food Products,
Inc.*, 2012 WL 5941801, at *19 (E.D. Cal. Nov. 27, 2012) (1,345.7 hours
"reasonable in light of the legal issues and the amount of discovery conducted, the
number of Defendant's employees included in the Settlement Classes, the mediation

---

[3] Plaintiffs' Counsel provides a description of these hours in the accompanying
declaration and can provide a full report for *in camera* review if needed by the
Court.

preparation required, and motion practice with respect to the Settlement Agreement").

The hours expended here were necessary to effectively litigate this case and are in line with those approved in similar cases.[4] The Court should find they are reasonable for purposes of a lodestar crosscheck.

Counsel's rates have been approved in this district and align with those previously approved. The primary attorney litigating this case, Daniel Brome, has substantial wage and hour experience. (Brome Dec. ¶ 8.) Counsel's time was billed at $550 for Mr. Brome (admitted to California bar in 2011), $700 for Partner Michele R. Fisher, $195 per hour for non-lawyer staff time, and $225-$275 for damages analyst time. In April 2023, Judge Carney in the Central District of California approved a rate of $525 for Mr. Brome in the context of a lodestar crosscheck. *See Medina v. Evolve Mortgage Services, LLC*, 2023 WL 11915763, at *9 (C.D. Cal. Apr. 3, 2023). Going back further, in 2021 Judge Alsup likewise recognized that Counsel's rates – at that time, $450 for Mr. Brome – were reasonable and "compare favorably to recent approvals." *Kudatsky v. Tyler Technologies, Inc.*, 2021 WL 5356724, at *5 (N.D. Cal. Nov. 17, 2021) (citing *Bisaccia v. Revel Systems, Inc.*, 2019 WL 3220275, at *8 (N.D. Cal. July 17, 2019)). And in 2019, Judge Gilliam conducted a lodestar crosscheck and found that Counsel's rates of $175 for clerks and paralegals, $425 for senior associates, and $625 to $675 for partners were "reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation." *Bisaccia*,

---

[4] The total number of hours includes time spent on the FLSA collective claims and California class claims, which were not successful. However, courts considering fees from a common fund do not typically reduce hours based on partial success. Moreover, the claims here are closely related, making it inappropriate to exclude time spent on the minimum wage claim. *Cf. Dilts v. Penske Logistics, LLC*, 2016 WL 4530816, at *7 (S.D. Cal. Mar. 11, 2016) (finding that the settled claim did not involve the same facts or theories as other claims).

2019 WL 3220275, at *8. Counsel's rates have increased since those orders but are still reasonable in light of counsel's experience and are in line with rates approved in this district for similar work.

### E.    The Court Should Approve the Requested Costs

Plaintiffs' Counsel requests reimbursement of $30,000 in costs. This is less than half the costs actually incurred in this matter. (Brome Dec. ¶ 14.) The court in *Patel* approved $60,000 as reasonable, where that amount constituted only 61% of counsel's estimated costs. 2019 WL 2029061, at *4. Here too, the Court should find that incurring these costs—largely attributable to deposition transcripts, Relativity hosting, and travel—was reasonably necessary to obtaining the result here, and should be approved.

### F.    The Court Should Approve the Modest Enhancement Awards

Because the Named Plaintiffs are receiving compensation for their individual claims through this settlement, the settlement provides for very modest enhancement awards of $500 each. This amount recognizes that the Named Plaintiffs provided a service in bringing this case and creating a benefit for the State and the aggrieved employees, and it is well below what courts approve in similar PAGA cases. *See Middleton*, (reducing enhancement award from $5,000 to $3,500). Importantly, it is appropriate to award a service award even through the Named Plaintiffs are also receiving compensation for their individual claims. *Connelly*, 2023 WL 6387077, at *12 (approving individual payment, where portion of the payment "is reasonably attributable to the general release of individual claims, and that less than $5,000 would be attributable to the service award aspect and thus would fall under the $5,000 presumptively reasonable service award."). Here, the Court should approve the $500 service awards, which are significantly below the presumptively reasonable amount.

### G.    The Court Should Approve the *Cy Pres* Designee

After the close of the check cashing period, funds associated with any uncashed checks will be donated to Legal Aid at Work as *cy pres* beneficiary. Formerly known as the Legal Aid Society – Employment Law Center, Legal Aid at Work is a non-profit organization "that provides civil legal services to the indigent and pro bono employment law advice to low-income communities." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) (approving designation as *cy pres* recipient, noting that "the work performed by the Employment Law Center bears a substantial nexus to the interests of the class members" in a wage and hour case). Legal Aid at Work "works to ensure that all workers benefit from the laws that regulate pay and work hours." *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4 (C.D. Cal. June 13, 2013). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue. *Aronson*, 2023 WL 2025706, at *5 (approving Legal Aid at Work as *cy pres* beneficiary in PAGA case); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848, at *6 (E.D. Cal. Nov. 27, 2017) (approving Legal Aid at Work as *cy pres* beneficiary in wage and hour class and collective settlement, citing *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)).

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs request the Court grant the Motion for Settlement Approval in full.

Dated: September 16, 2024          **NICHOLS KASTER, LLP**

By:    */s/Daniel S. Brome*
       Daniel S. Brome

Attorney for Plaintiffs